**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Home   Buyers   Warranty Corporation,<br><br>        Petitioner,<br><br>vs.<br><br>Randy Leighty; Melyssa Leighty, Husband and Wife,<br><br>        Respondents. | No. CV 07-177-PHX-RCB<br><br>**O R D E R** |

Currently pending before the court is a motion to dismiss for lack of subject matter jurisdiction brought pursuant to Fed. R. Civ. P. 12(b)(1) by respondents, Randy and Melyssa Leighty (doc. 6).  Also pending before the court is a motion by petitioner Home Buyers Warranty Corporation ("HBW") to compel arbitration and to stay the parallel state court action of <u>Leighty v. U.S. Homes, et al.</u>, CV 2006-013254 (Superior Court, Maricopa Co.) ("<u>Leighty I</u>") (doc. 7).  For the reasons set forth below, the court grants the respondents' motion to dismiss for

lack of subject matter jurisdiction, and accordingly and denies as moot HBW's motion to compel arbitration.

### *Background*

Both this action and the related state court action arise out of respondent's dissatisfaction with a new home which they purchased in 1997. Respondents complain of a number of "movement-related" problems with that home such as "cracks in pool plaster, drywall cracks" and "linoleum splitting[.]" Mot. to Compel Arbitration (doc. 7), exh. 3 thereto (state court co.) at ¶ 5. In addition to naming HBW, a warranty company, as a defendant in Leighty I, respondents named the home builder/seller, U.S. Homes.

In Leighty I respondents allege six causes of action: (1) breach of contract; (2) breach of the "warranty of workmanship[;]" (3) breach of the "warranty of habitability[;]" (4) negligence; (5) negligent misrepresentation; and (6) violations of the Arizona Consumer Fraud Act ("ACFA"), A.R.S. § 44-1522. See id., exh. 3 thereto. In that state court action respondents are seeking unspecified damages "in an amount as will be proven at trial, but believed to be in excess of $50,000.00[.]" Id. at ¶ 14. Respondents also are seeking, "where appropriate at law, exemplary damages . . . , plus, where appropriate at law, attorneys fees, costs and disbursements, interest, disgorgement and injunctive or reformation relief[.]" Id. at 12. Respondents did not allege any discrete amounts with respect to these other types of damages and relief though.

In accordance with section 4 of the Federal Arbitration

1   Act("FAA"),[1] on January 29, 2007, HBW commenced the present action

2   specifically seeking "to Compel Arbitration and Stay [the] State

3   Action[.]" Co. (doc. 1) at 2. HBW relies upon 28 U.S.C. § 1332

4   and section 4 of the FAA, 9 U.S.C. § 4, as the jurisdictional

5   bases for its claims.  Mirroring the language of section 1332, in

6   its complaint HBW baldly alleges that "[t]he amount in

7   controversy exceeds $75,000, exclusive of interest and costs."

8   Co. (doc. 1) at 2, ¶ 4.  HBW further alleges, more specifically,

9   that in Leighty I respondents are asserting that "HBW's alleged

10  breaches and misrepresentations entitle [them] to recovery of

11  $50,000+ repairs *plus* statutory interest (at 10% per annum),

12  attorney's fees, taxable costs and disbursements, and punitive

13  damages."  Id. at 4, ¶ 9 (emphasis in original).

14      On March 6, 2007, respondents filed the present motion to

15  dismiss arguing first that the FAA does not create an independent

16  ground of federal jurisdiction.  Second, respondents argue that

17  HBW did not sufficiently allege the $75,000.00 minimum amount in

18  controversy necessary to confer subject matter jurisdiction upon

19  this court pursuant to 28 U.S.C. § 1332.  Shortly thereafter, on

20  March 13, 2007, HBW filed its motion to compel arbitration and to

---

[1]      Section four provides in relevant part as follows:

        A party aggrieved by the alleged failure, neglect,
    or refusal of another to arbitrate under a written
    agreement for arbitration may petition any United States
    district court which, save for such agreement, would have
    jurisdiction under Title 28, in a civil action . . . of the
    subject matter of a suit arising out of the controversy
    between the parties, for an order directing that such
    arbitration proceed in the manner provided for in such
    agreement.

9 U.S.C. § 4 (West 1999).

- 3 -

1   stay the state court action (doc. 7).  Respondents did not file a

2   response to that motion.  On July 27, 2007, HBW filed what it

3   denominated as a reply, wherein it continues to seek an order

4   compelling arbitration, in the event the court denies the motion

5   to dismiss.  See Reply (doc. 14) at 2-3.[2]

6                            ***Discussion***

7   ***I.  Subject Matter Jurisdiction***

8        As previously noted, HBW asserts two separate jurisdictional

9   bases – the FAA and diversity.  The court will address each in

10  turn.

11       ***A.  FAA***

12       "[T]he [FAA] creates federal substantive law requiring the

13  parties to honor arbitration agreements[.]" Southland Corp. v.

14  Keating, 465 U.S. 1, 17 n. 9 (1984).  By the same token though,

15  it is well established that "[t]he FAA 'does not create any

16  independent federal-question jurisdiction.'" Douglas v. U.S.

17  Dist. Court for Cent. Dist. Cal., 495 F.3d 1062, 1067 n.2 (9th

18  _____

19       [2]    When respondents filed their motion to dismiss, they advised
    the court that U.S. Homes had filed a motion to compel arbitration in Leighty I,
20  and that that motion was to be argued on March 28, 2007.  Mot. (Doc. 6) at 2.
    As it may, the court has taken judicial notice of those state court proceedings.
21  See Kolocotronis v. Benefis Health Care, 2007 WL 2710366, at *3 n.3 (D. Mont.
    Sept. 13, 2007) (citing, inter alia, Smith v. Duncan, 297 F.3d 809, 815 (9th Cir.
22  2002)) ("The Court may take judicial notice of matters of public record . . . ,
    including  pleadings or documents filed in state or federal courts.") From the
    filings in Leighty I it appears that the state court granted that motion to
23  compel, and stayed that action until October 4, 2007, to allow completion of the
    arbitration.  See Leighty I, slip op. at 4 (Superior Court, April 4, 2007) (doc.
24  code 078).  More recently, in an order filed on October 26, 2007, the state court
    continued Leighty I on its "Inactive Calendar for dismissal on **April 4, 2008**,
25  without notice, unless prior to that date a Judgment is entered, a Stipulation
    and Order to Dismiss is presented or a Motion to Set and Certificate of Readiness
26  is filed." Id., slip op. at 1 (Superior Court, Oct. 25, 2007) (doc. code 084)
    (emphasis in original).  Evidently, however, that arbitration involves only
27  respondents and U.S. Homes, as HBW continues to seek arbitration in this action.

28                              - 4 -

Cir. 2007) (quoting <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 25 n. 32 (1983)).  "Rather, § 4 of the FAA 'provides for an order compelling arbitration *only* when the federal district court would have jurisdiction over a suit on the underlying dispute; hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue.'" <u>Blue Cross of California v. Anesthesia Care Assoc.</u>, 187 F.3d 1045, 1050 (9th Cir. 1999) (quoting <u>Moses H. Cone</u>, 460 U.S. at 25 n. 32) (emphasis added).  As these well settled principles show, HBW is improperly relying upon the FAA as a basis for subject matter jurisdiction in this action.  Therefore, subject matter jurisdiction exists here, if at all, based upon HBW's second asserted basis – 28 U.S.C. § 1332.

### B.  Diversity Jurisdiction

Section 1332 provides in relevant part that district courts "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . *citizens* of different States[.]" 28 U.S.C. § 1332(a)(1) (West 2006) (emphasis added).  Thus, as this court recently explained in <u>Lacombe v. Bullhead City Hosp. Corp.</u>, 2007 WL 2702005 (D.Ariz. Sept. 12, 2007):

> To establish federal jurisdiction under this statute, two requirements must be met. First, "*each* defendant [must be] a citizen of a different state from *each* plaintiff." <u>Owen Equip. & Erection Co. v. Kroger</u>, 437 U.S. 365, 373 (1978) (emphasis in original) . . . Second, the complaint must include allegations that the amount in controversy "exceeds" $75,000.00.

1  <u>Id.</u> at *1 (other citation omitted).  As will be seen, HBW cannot

2  meet either requirement.

3              ### *1.  Citizenship*

4       As in <u>Lacombe</u>, "[e]ven though 28 U.S.C. § 1332 'speaks of

5  citizenship, not of residency,' [HBW] . . . did not [expressly]

6  allege the citizenship of any of the parties."  <u>Id.</u> at *2

7  (quoting <u>Kanter v. Warner-Lambert Co.</u>, 265 F.3d 853, 857 (9th

8  Cir. 2001)).  HBW did allege, however, that it is "a Colorado

9  corporation with its principal place of business [in] . . . ,

10 Denver, Colorado."  Co. (doc. 1) at 2, ¶ 1.  As to the individual

11 respondents, HBW alleges that each of them "reside[] in Maricopa

12 County in the State of Arizona."  <u>Id.</u> at 2, ¶¶ 2 and 3.  Under

13 the governing case law, as discussed below, while HBW's

14 allegations are sufficient to establish that it is a citizen of

15 Colorado for diversity purposes, HBW's allegations as to the

16 residency of the individual respondents are insufficient to

17 establish their citizenship.

18            ### *a.  Corporate Petitioner*

19      "Corporations have dual citizenship for purposes of

20 diversity jurisdiction[.]"  <u>Lacombe</u>, 2007 WL 2702005, at *3.  "A

21 corporation is deemed to be a citizen of both the State in which

22 it is incorporated 'and of the State where it has its principal

23 place of business.'"  <u>Id.</u> (quoting 28 U.S.C. § 1332(c)(1)).  Based

24 upon the allegations in its complaint, although HBW did not

25 explicitly allege its citizenship, it can easily be inferred that

26 it is a citizen of Colorado, the state where it is both

27 incorporated and where it has its principal place of business.

28                        - 6 -

### *b. Individual Respondents*

HBW's complaint cannot be so generously read, however, in terms of the citizenship of the individual respondents.  On more than one occasion, this court has recently explicated "'the simple allegations needed to establish a natural person's state of citizenship[]' under § 1332(a)(1)[.]" Id. (quoting Western World Insurance Company v. Ramirez, 2007 WL 1839594, at *1 (D.Ariz. June 26, 2007)).  More specifically:

> To be a citizen of a state, a natural person must first be a citizen of the United States.... *The natural person's state citizenship is then determined by her state of domicile, not her state of residence.* A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return.... *A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state.*

Id. (quoting Western World, 2007 WL 1839594, at *1) (quoting in turn Kanter, 265 F.3d at 857) (emphasis added by Western World court).  In Western World, "[t]his court went on to explain that '[t]he distinction between domicile and residence is an uncontroversial principle to which the Supreme Court has spoken long ago:'[A]n averment that a party resided within the State or the district in which the suit was brought was not sufficient to support the jurisdiction, because in the common use of words a resident might not be a citizen, and therefore it was not stated expressly and beyond ambiguity that he was a citizen of the State, which was the fact on which the jurisdiction depending[.]''" Id. (quoting Western World, 2007 WL 1839594, at *1) (quoting in turn Shaw v. Quincy Mining Co., 145 U.S. 444, 447 (1892)).

1    "Applying these well settled diversity jurisdiction pleading

2    requirements to the present case," as in LaCombe, HBW's "failure

3    to allege the state of citizenship of [the] individual

4    [respondents] is fatal because" HBW, as "the party asserting

5    diversity jurisdiction[,] bears the burden of proof[.]" Id.

6    (citing Kanter, 265 F.3d at 85758 (citation omitted)).  Also as

7    in Western World and LaCombe, "this court cannot simply assume

8    the state of citizenship of the individual respondents "based on

9    where they reside or have resided." Id. (citing Western World,

10   2007 WL 1839594, at *2). Thus, even though respondents "do not

11   dispute that there is complete diversity of citizenship between

12   the parties[,]" the court is not free to ignore the explicit

13   pleading requirements for diversity of citizenship as enunciated

14   by the Supreme Court.  See Resp. (doc. 10) at 3 (citation

15   omitted).  Accordingly the court finds, as it must, that HBW has

16   not properly alleged the citizenship of the individual

17   respondents as required to invoke section 1332.  It appears that

18   this jurisdictional defect could likely be cured by amendment,

19   and ordinarily the court would allow such amendment as it did in

20   Lacombe.  See id. at *4.  Given that this jurisdictional defect

21   is curable, combined with the fact that the amount in controversy

22   is the focus of this dismissal motion, requires close examination

23   of the amount in controversy element.

24              **_2.  Amount in Controversy_**

25       Incorrectly assuming that complete diversity of citizenship

26   has been properly alleged, respondents direct their motion to

27   dismiss solely to the amount in controversy.  Before delving into

28                                    - 8 -

1  whether HBW has met the statutory minimum necessary to confer

2  jurisdiction pursuant to section 1332, there are two matters

3  which the court must address.  The first is how to determine the

4  amount of controversy in the context of a petition to compel

5  arbitration.  The second and more contentious issue centers

6  around the burden of proof.

7              ***a.  Focus of Amount in Controversy Inquiry***

8          In contrast to the burden of proof issue, the parties seem

9  to agree that in determining the amount of controversy when a

10  petition to compel arbitration is brought, the focus is on "the

11  potential award in the underlying arbitration proceeding."  See

12  Circuit City Stores v. McLemore, 2001 WL 1705659, at *4 (N.D.Cal.

13  2001), vacated on other grounds, 70 Fed. Appx. 917 (9th Cir.

14  2003) (citing, inter alia, Jumara v. State Farm Ins. Co., 55 F.3d

15  873, 877 (3rd Cir. 1995)); see also Webb v. Investacorp, Inc., 89

16  F.3d 252, 257 n. 1 (5th Cir. 1996) (§ 1332's amount in

17  controversy met given that the difference to plaintiffs "between

18  winning and losing the underlying arbitration w[ould] be

19  $75,000[]").  Thus, "[t]he damages sought in the state court

20  action . . . is the amount in controversy."  Doctor's Associates,

21  Inc. v. Hamilton, 150 F.3d 157, 160 (2d Cir. 1998) (internal

22  quotation marks omitted).  The rationale for "look[ing] through

23  to the possible award resulting from the desired arbitration" is

24  that "the petition to compel arbitration is only the initial step

25  in a litigation which seeks as its goal a judgment affirming the

26  award."  Id. (internal quotation marks and citations omitted).

27        Admittedly, there is no Ninth Circuit case directly on

28                                  - 9 -

1  point.   See Circuit City Stores , 2001 WL 1705659, at *4 ("The

2  issue of amount in controversy in the context of a petition to

3  compel arbitration has apparently not been addressed by the Ninth

4  Circuit.")  In Theis Research, Inc. v. Brown & Bain, 400 F.3d 659

5  (9th Cir. 2005), however, the Ninth Circuit held that in a

6  proceeding to vacate an arbitration award, "the amount in

7  controversy is the amount [plaintiff] sought to recover by its

8  complaint."  Id. at 664.  That holding strongly suggests that if

9  directly confronted with the issue of how to measure the amount

10  in controversy in a petition to compel arbitration, the Ninth

11  Circuit would, in all likelihood, follow the approach outlined

12  above taken by the Second, Third and Fifth Circuits.

13  Accordingly, to measure the amount in controversy here, the court

14  will examine the "underlying [state court] cause[s] of action

15  that w[ill] be arbitrated[,]" as opposed to HBW's complaint

16  seeking to compel arbitration.  See Jumara, 55 F.3d at 877.

17  ### *b.  Burden of Proof*

18  Respondents repeatedly contend that to survive this motion

19  to dismiss HBW must "**prove[]**" that the amount in controversy in

20  the underlying state court action satisfies the $75,000.00

21  statutorily prescribed minimum under section 1332.  Mot. (doc. 6)

22  at 6 (emphasis in original); see also id. at 7 (emphasis in

23  original) (HBW "must **prove** that respondent[s] seek[] more than

24  the threshold amount."); and at 8 ("[T]he burden is on [HBW] to

25  prove that the amount in controversy is over $75,000.00[.]"); and

26  Reply (doc. 10) at 6 (HBW's failure to "present[] . . . competent

27  proof" of the "value of the . . . allegations in the state court

28  - 10 -

1    complaint[]" requires dismissal).  Instead of offering such

2    proof, however, from respondents' perspective HBW is relying upon

3    nothing more than "self-serving statements . . . and a set of

4    woeful magical incantations[,]" none of which suffice to prove

5    that the $75,000.00 threshold has been met here.  Id. at 5

6    (internal quotation marks omitted).  Respondents add that because

7    U.S. Homes is named as a defendant in the state court action,

8    along with HBW, that "further decrease[s] the likelihood that the

9    amount in controversy" exceeds the "$75,000.00 jurisdictional

10   threshold."[3]  Id. at 8.

11       Relying upon the seminal case of St. Paul Mercury Indemnity

12   Co. v. Red Cab Co., 303 U.S. 283 (1938), HBW impliedly urges the

13   court to apply a "legal certainty" standard in assessing the

14   amount in controversy.  Under that standard, "[a] dismissal for

15   lack of jurisdiction . . . is warranted only if it appears to the

16   Court to a legal certainty that the amount of the claim is really

17   less than the jurisdictional amount."  Floyd v. Oliverson, 2007

18   WL 3237728, at *7 (D. Mont. Oct. 31, 2007) (citing, inter alia,

19   St. Paul Mercury, 303 U.S. at 288).  HBW reasons that because in

20   the state court action Respondents allege damages "believed to be

21   in excess of $50,000.00[,]" as well as claims for punitive

22   damages, attorney's fees and statutory interest, it does not

23   "appear[] . . . to a legal certainty that the amount of the

24   _____

25       [3]    This argument need not detain the court for long.  In their state
     court action respondents allege joint and several liability  Mot. to Compel
26   Arbitration (doc. 7), exh. 3 thereto (st. ct. co.) at ¶ 2.  Thus it does not, as
     respondents suggest, necessarily follow that because there is more than one
27   defendant in that action, the amount in controversy is more likely to be less
     than the statutory minimum.

28                                 - 11 -

1   [state court] claim[s] is really less than" $75,000.00.  See Mot.

2   to Compel (doc. 7), exh. 3 thereto at ¶ 14 (emphasis added).  HBW

3   thus concludes that subject matter jurisdiction exists here, and

4   therefore the court must deny respondents' motion to dismiss.

5       Respondents challenge HBW's reliance upon the "legal

6   certainty" standard, asserting that that standard has been

7   "flatly rejected by the Courts in cases such as the instant

8   case."  Reply (doc. 10) at 7.  Based upon Gaus v. Miles, Inc.,

9   980 F.2d 565 (9th Cir. 1992), and its progeny, respondents

10  explain that the "legal certainty" test does not come into play

11  when an indeterminate amount of damages has been alleged[,]" as

12  in the underlying state court action.  Reply (doc. 10) at 7.

13  Thus, as noted at the outset, respondents maintain that it is

14  "incumbent upon [HBW] to prove, with competent proof, that [the

15  state court] complaint alleges damages in excess of $75,000.00."

16  Id. at 8.  Because HBW has "failed to provide such proof,"

17  respondents contend that the state court "complaint should be

18  taken on its face[.]"  Id.  When that is done, as respondents read

19  that complaint, it does not "allege over $75,000" in controversy;

20  hence, subject matter jurisdiction is lacking.  See id.

21  Therefore, the court must dismiss this action.

22      Admittedly, Gaus and its progeny limit the applicability of

23  the St. Paul Mercury legal certainty test.  What Respondents fail

24  to take into account, however, is that Gaus and Sanchez v.

25  Monumental Life Ins. Co., 102 F.3d 398 (9th Cir. 1996), the

26  cases upon which they rely, were both removed actions.  As such,

27  the Ninth Circuit required the moving defendants to prove the

28

1    amount in controversy by a preponderance of the evidence.   The

2    Court required that standard of proof primarily for two reasons.

3    First, the Ninth Circuit invoked the "strong presumption" against

4    removal jurisdiction.  See Gaus, 980 F.2d at 566; Sanchez, 102

5    F.3d at 403.   Second, requiring that burden of proof is

6    consistent with the removing defendant's "burden of setting

7    forth, in the removal petition itself, the *underlying facts*

8    supporting its assertion that the amount in controversy exceeds

9    [$75,000.00]." Gaus, 980 F.2d at 566 (citation omitted) (emphasis

10   in original); and Sanchez, 102 F.3d at 403-04.   Arguably neither

11   of those concerns is implicated in this "independent federal

12   suit[,]" which was not removed from state court.   See Associates

13   Housing Finance, LLC v. Young, 2001 WL 34043450, at *3 (D.Or.

14   2001) (internal quotation marks and citations omitted).

15   Moreover, in Gaus itself the Ninth Circuit recognized that "[i]n

16   diversity cases, where the amount in controversy is in doubt, the

17   Supreme Court has drawn a sharp distinction between original and

18   removal jurisdiction[.]" Gaus, 980 F.2d at 566. Thus, simply put,

19   because this is not a removed action, Respondents' reliance upon

20   removal cases such as Gaus is misplaced.

21        Additionally, even after Gaus and its progeny the Ninth

22   Circuit has continued to employ the "legal certainty" test in

23   diversity actions such as this where the amount in controversy is

24   at issue.   For example, in Crum v. Circus Circus Enterprises, 231

25   F.3d 1129 (9th Cir. 2000), the Ninth Circuit started from the

26   well-settled rule that "[g]enerally the amount in controversy is

27   determined from the face of the pleadings."   Id. at 1131.   Citing

28                                  - 13 -

1   to St. Paul Mercury, the Ninth Circuit recited the equally well-

2   settled rule that "[t]he sum claimed by the plaintiff controls so

3   long as the claim is made in good faith." Id. (citing St. Paul

4   Mercury, 303 U.S. at 288).   In further reliance upon St. Paul

5   Mercury, the Court in Crum expressly stated that "'[t]o justify

6   dismissal, 'it must appear to a legal certainty that the claim is

7   really for less than the jurisdictional amount.'"[4] Id. (quoting

8   Budget Rent-a-Car, Inc. v. Higashiguchi, 109 F.3d 1471, 1473(9th

9   Cir. 1997) (quoting in turn St. Paul Mercury, 303 U.S. at 289).

10  Applying that standard, the Ninth Circuit held that "it does not

11  appear legally certain that [plaintiff] cannot recover more than

12  $75,000.00[]" where she alleged $13,000.00 in medical expenses;

13  estimated lost income in excess of $100,000.00; estimated future

14  medical expenses of $36,000.00; and that "her injuries w[ould]

15  cause a lifetime of pain and suffering."[5] Id. (citing 28 U.S.C.

16  § 1332(a)).   Accordingly, the Court in Crum reversed the district

17  court's dismissal for lack of subject matter jurisdiction due to

18  sufficiently plead the requisite amount in controversy.

19      Because this is not a removed action and because the Ninth

20  Circuit has applied the legal certainty test in diversity cases

21

22      [4]   In Horton v. Liberty Mut. Ins. Co., 367 U.S. 348 (1961), the Supreme
    Court clarified the relationship between the good faith inquiry and the legal
23  certainty standard, stating that "[i]n deciding the question of good faith[,] .
    . . it 'must appear to a legal certainty that the claim is really for less than
24  the jurisdictional amount to justify dismissal.'" Id. at 353 (quoting St. Paul
    Mercury, 303 U.S. at 289).

25      [5]   More recently, the Ninth Circuit applied the "legal certainty" test
26  to a Magnuson-Moss Warranty Act claim and held that the district court properly
    granted a motion to dismiss for lack of subject matter jurisdiction because
27  plaintiff's claims did not meet the statutory threshold under that Act.   Kelly
    v. Fleetwood Enterprises, Inc., 377 F.3d 1034, 1037-38 (9th Cir. 2004).

28                                  - 14 -

1  such as this, this court will employ that test to resolve

2  respondents' motion to dismiss.  At the same time though, the

3  court is fully cognizant that "[o]n a motion to dismiss for lack

4  of subject matter jurisdiction, the plaintiff bears the burden of

5  establishing subject matter jurisdiction (even though it is

6  defendants' motion)."  <u>Sun Microsystems, Inc. v. Hynix</u>

7  <u>Semiconductor, Inc.</u>, 2007 WL 3022556, at *5 (N.D.Cal. Oct. 15,

8  2007) (citing, <i>inter alia</i>, <u>Kokkonen v. Guardian Life Ins. Co. of</u>

9  <u>America</u>, 511 U.S. 375 (1994)).  In this regard, a plaintiff's

10 "pleading must show 'affirmatively and distinctly the existence

11 of whatever is essential to federal jurisdiction[.]'"  <u>Kelly v.</u>

12 <u>Echols</u>, 2005 WL 2105309, at *2 (E.D.Cal. 2005) (quoting <u>Tosco</u>

13 <u>Corp. v. Communities For a Better Env't</u>, 236 F.3d 495, 499 (9th

14 Cir. 2001)).  Therefore, HBW has the burden of "show[ing] that

15 it d[oes] not appear to a legal certainty that [its] claim for

16 relief [is] for less than the statutorily prescribed amount of

17 $75,000.00."  <u>See</u> <u>Floyd</u>, 2007 WL 3237728, at *8 (citing <u>United</u>

18 <u>States v. Southern Pacific Transportation Co.</u>, 543 F.2d 676, 682

19 (9th Cir. 1976)).  For the reasons outlined below, the court

20 finds that HBW has not met this burden.

21       In deciding whether HBW has met its burden, the court notes

22 that respondents are making a facial attack "<i>i.e.</i>, the[y] [are]

23 contend[ing] that the allegations of jurisdiction contained in

24 the [state court] complaint are insufficient to demonstrate the

25 existence of jurisdiction[.]" <u>See</u> <u>Denney v. Drug Enforcement</u>

26 <u>Administration</u>, 508 F.Supp.2d 815, 824 (E.D.Cal. 2007).

27 Respondents did not file a "'speaking motion,' that is, [they]

28

1  are not attacking jurisdiction with extrinsic evidence." See

2  American Economy Insurance Co. v. Herrera, 2007 WL 2696716, at

3  *1, n.1 (S.D.Cal. Sept. 11, 2007) (citing Trentacosta v. Frontier

4  Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1558 (9th Cir. 1987)).

5  Hence, because this is a facial attack, HBW "is entitled to

6  safeguards similar to those applicable when a Rule 12(b)(6)

7  motion is made." See Denney, 508 F.Supp.2d at 824.  Namely,

8  "[t]he factual allegations of the [state court] complaint are

9  presumed to be true, and the motion is granted only if the

10  plaintiff fails to allege an element necessary for subject matter

11  jurisdiction." Id. (internal quotation marks and citations

12  omitted).  By the same token, however, "[u]nlike a Rule 12(b)(6)

13  motion, . . . the court will not reasonably infer allegations

14  sufficient to support federal subject matter jurisdiction because

15  a plaintiff must affirmatively allege such jurisdiction."

16  Hawai'i Disability Center v. Chenung, 2007 WL 2823761, at *__ (D.

17  Hawai'i Oct. 1, 2007) (internal quotation marks and citation

18  omitted); see also Kelly, 2005 WL 2105309, at *2 (citing, inter

19  alia, Century Southwest Cable Television, Inc. v. CIIF Assocs.,

20  33 F.3d 1068, 1071 (9th Cir. 1994) ("[S]ubject matter

21  jurisdiction must be affirmatively alleged, courts will not infer

22  allegations supporting federal jurisdiction."))

23      Applying the foregoing principles to the present case

24  compels a finding that subject matter jurisdiction is lacking

25  here because the requisite $75,000.00 amount in controversy was

26  not sufficiently alleged.  Looking at the stakes in the

27  underlying arbitration, the respondents allege only that the

28

1    damages sought are "*believed* to be in excess of *$50,000.00*[.]"

2    Mot. to Compel Arbitration (doc. 7), exh. 3 (state court co.)

3    thereto at ¶ 14 (emphasis added).  This speculative allegation

4    does not come close to "affirmatively and distinctly" alleging

5    the $75,000.00 amount in controversy necessary to confer

6    jurisdiction under section 1332.  See Tosco Corp., 236 F.3d at

7    499.  HBW attempts to satisfy that statutory minimum by

8    piggybacking onto the claimed $50,000.00 plus in damages the

9    other types of damages which respondents are seeking in the state

10   court action.  This attempt is unavailing.

11       First of all, HBW makes much of the fact that "[s]tatutory

12   interest in Arizona is at 10% per annum (A.R.S. § 44-1201(A)),

13   and the [respondents] claim HBW first breached the HBW Warranty

14   in 1998."  Resp. (doc. 8) at 7 (citations omitted).  Section

15   1332(a) explicitly provides that the amount in controversy must

16   "exceed[]" $75,000.00, "exclusive of interest and costs[,]"

17   however.  28 U.S.C. § 1332(a).  Therefore, in calculating the

18   amount in controversy, the court will not consider any possible

19   award of interest, no matter how large.

20       Likewise, to satisfy the $75,000.00 amount in controversy,

21   HBW cannot rely upon a possible award of punitive damages under

22   the Arizona Consumer Fraud Act ("ACFA"), which HBW claims "if

23   proven, can be valued in an amount five times compensatory

24   damages[.]"  See Resp. (doc. 8) at 7 (citation omitted).  To be

25   sure, "[p]unitive damages are available under the ACFA[.]"  Howell

26   v. Midway Holdings, Inc., 362 F.Supp.2d 1158, 1165 (D.Ariz. 2005)

27   (citation omitted).  Especially where the damages which

28

1   respondents are seeking to recover are only "believed to be in

2   excess of $50,000.00[,]" Mot. to Compel Arbitration (doc. 7),

3   exh. 3 thereto at ¶ 14, the unspecified potential punitive

4   damages in the underlying arbitration does not suffice to show,

5   as HBW contends, that the stakes therein exceed $75,000.00.   Cf.

6   Nguyen v. Hartford Casualty Insurance Co., 2007 WL 2206903, at *3

7   (D.Ariz. July 30, 2007) (internal quotation marks and citations

8   omitted)(remanding where, inter alia, removing defendant did not

9   "take into account . . . that the mere possibility of a punitive

10  damage award is insufficient to prove that the amount in

11  controversy requirement has been met[]'"). Given that "[w]hether

12  to award punitive damages and the amount thereof is within the

13  discretion of the jury[,]" Schmidt v. American Leasco, 679 P.2d

14  532, 535 (Ariz. Ct. App. 1984) (citation omitted), further

15  undermines HBW's ability to establish the requisite amount in

16  controversy by relying upon a possible punitive damage award.

17  Cf. Valente v. Colonial Life & Acc. Ins., 2007 WL 2221048, at *6

18  (E.D.Cal. Aug. 1, 2007) (citation omitted) (refusing to consider

19  a punitive damage award in calculating amount in controversy

20  because such award "is solely with the discretion of the trier of

21  fact[,]" and defendants did not show "by a preponderance of the

22  evidence that such an award is likely or the amount of any such

23  damages if awarded[]") recommendation adopted in full, 2007 WL

24  2582893, at *1 (E.D.Cal. Sept. 7, 2007).

25      HBW is correct that "[a]ttorneys' fees may be included in

26  computing the amount in controversy 'where an underlying statute

27  authorizes an award of attorneys' fees, either with mandatory or

28                              - 18 -

1  discretionary language.'" <u>Shoemaker v. Sentry Life Ins. Co.</u>, 484

2  F.Supp.2d 1057, 1058 (D.Ariz. 2007) (quoting <u>Galt G/S v. JSS</u>

3  <u>Scandinavia</u>, 142 F.3d 1150, 1156 (9th Cir. 1998)).  "Arizona law

4  authorizes a discretionary award of attorneys' fees in contract

5  actions."  <u>Id.</u> (citing A.R.S. § 12-341.01(A)[6]).  Although the

6  state court complaint alleges that respondents "have incurred and

7  continue[] to incur attorneys fees[,]" it is silent as to the

8  amount.  Mot. to Compel Arbitration (doc. 7), exh. 3 (st. ct.

9  co.) thereto at ¶ 8.  It does not, for example, allege the hours

10 expended by respondents' attorneys to date, nor their hourly

11 rate.  Thus, the court declines to take into account this wholly

12 speculative attorneys' fee award in determining whether HBW has

13 satisfied section 1332's statutory threshold.  <u>Cf.</u> <u>Alvarez v.</u>

14 <u>Limited Express, LLC</u>, 2007 WL 2317125, at *4 n.3 (S.D.Cal. Aug.

15 8, 2007) (citation omitted) (remanding where, among other things,

16 "defendant claim[ed] the reasonable attorneys' fees result[ed] in

17 an even higher amount in controversy, [but] [it] provide[d] the

18 Court with no data from which [to] compute the estimated

19 attorneys' fees recoverable[]").

20     At the end of the day, in calculating the amount in

21 controversy in the underlying arbitration, the court is left with

22 nothing more than respondents' "belie[f]" that their damages will

23 be "in excess of $50,000.00" – not even a belief that those

24

25         [6]   Respondents did not mention this statute in their state court
26 complaint and HBW did not reference it in its Response.  Presumably, however,
   this is the basis for HBW's assertion that "statutory attorney's fees" should be
27 included when computing the amount in controversy herein.  <u>See</u> Resp. (doc. 8) at
   7.

28                                    - 19 -

1   damages will be in excess of $75,000.00 as section 1332 mandates.

2   See Mot. to Compel Arbitration (doc. 7), exh. 3 (st. ct. co.)

3   thereto at ¶ 14.  Moreover, even including unspecified attorneys'

4   fees and punitive damages, the state court complaint upon which

5   HBW must rely does not "affirmatively and distinctly" show the

6   existence of an amount in controversy in excess of $75,000.00,

7   exclusive of costs and interest – an essential element of

8   jurisdiction under section 1332.  See Tosco Corp., 236 F.3d at

9   499.  To find that the amount in controversy in the underlying

10  arbitration exceeds $75,000.00 would require the court to

11  impermissibly infer allegations to support federal subject matter

12  jurisdiction.  See Hawai'i Disability, 2007 WL 2823761, at *__.

13  In short, because it appears to a "legal certainty" that the

14  stakes in the underlying arbitration "are really for less than"

15  $75,000.00, the court grants respondents' motion to dismiss for

16  lack of subject matter jurisdiction pursuant to Fed. R. Civ. P.

17  12(b)(1).[7]  The court hastens to add that construing the state

18  court complaint in this way is in keeping with the "presumption

19  . . . that 'a federal court . . . lack[s] jurisdiction in a

20  particular case unless the contrary affirmatively appears.'" See

21  Lacombe, 2007 WL 2702005, at *4 (quoting A-Z Intern. v. Phillips,

22  323 F.3d 1141, 1145 (9th Cir. 2003)); see also Kokkonen, 511 U.S.

23

24          [7]     The court is keenly aware that "[d]ismissal without leave to amend
    is improper unless it is clear, . . . ., that the complaint could not be saved by
    any amendment."  U.S. Mortg., Inc. v. Saxton, 494 F.3d 833, 840 (9th Cir. 2007)
25  (internal quotation marks and citation omitted).  Although as earlier noted
    amendment could save HBW's complaint in terms of citizenship, the same is not
26  true as to the jurisdictional amount in the underlying action, over which HBW has
    no control.  Therefore, because under the unique circumstances of this action,
27  respondents' complaint cannot "be saved by amendment[,]" there is no basis for
    granting leave to amend here.

28                                    - 20 -

1   at 377 (citation omitted) ("It is to be presumed that a cause

2   lies outside this limited jurisdiction [of federal courts],

3   . . . , and the burden of establishing the contrary rests upon

4   the party asserting jurisdiction.")

5       Because subject matter jurisdiction is lacking here, plainly

6   the court is unable to address petitioner's motion to compel

7   arbitration.  Consequently it denies that motion as moot.

8       To conclude, IT IS ORDERED that:

9       (1) respondents' motion to dismiss for lack of subject

10  matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) is

11  GRANTED (doc. 6); and IT IS FURTHER ORDERED that:

12      (2) petitioner's motion to compel arbitration (doc. 7) is

13  DENIED as moot.

14      DATED this 28th day of December, 2007.

15

16

17                          _____
                            Robert C. Broomfield
18                          Senior United States District Judge

19

20  copies to all counsel of record

21

22

23

24

25

26

27

28                              - 21 -